HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLOS JOHNSON,

    Plaintiff,

    v.

GRADY WAY STATION, LLC, et al.,

    Defendants.

CASE NO. C08-1651RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 37, 40). Plaintiff has requested oral argument; Defendants have not. The court finds these motions appropriate for disposition without oral argument. For the reasons stated below, the court DENIES both motions.

## II. BACKGROUND

No one disputes that on September 10, 2008, Plaintiff Carlos Johnson attempted to purchase ten dollars' worth of gasoline from a station in Renton, Washington, operated by Defendant Grady Way Station, LLC. Mr. Johnson gave ten dollars to Defendant Jay Cramer, the cashier on duty, then returned to his vehicle to pump gas. The pump did not work. Mr. Johnson returned to Mr. Cramer to inform him that the pump was not working; Mr. Cramer told him to try again. The two men repeated this process several times. Mr. Cramer at one point had Mr. Johnson attempt to get gasoline from a different

ORDER – 1

pump. Finally, Mr. Johnson gave up, and asked Mr. Cramer to return his ten dollars. As Mr. Cramer returned the money to Mr. Cramer, he used either the term "nigger" or "nigga" at least once. According to his counsel, Mr. Johnson's "racial identity was and is that of a Black male," and his "ethnic identity was and is that of an Afro-American." Pltf.'s Mot. at 2.

Mr. Cramer and Mr. Johnson have sharply different views of the transaction. Mr. Johnson alleges that at some point Mr. Cramer was deliberately refusing to dispense gasoline to him, and that his decision to do so was racially motivated. He alleges that when he asked for his money back, Mr. Cramer responded: "Nigger, what's your problem?" When Mr. Johnson expressed shock to other customers, Mr. Cramer allegedly said, "Yea, I called you a Nigger. So what." Mr. Johnson contends that Mr. Cramer threw ten dollars at him, and told him to "get the fuck out of the store." Mr. Johnson called the police soon thereafter, and a Renton Police Officer responded to the incident.

According to Mr. Cramer, Mr. Johnson's inability to pump gas was due to his own error, Mr. Cramer's error, or a combination of the two. He contends that he was juggling several customers, and inexperienced with the pump equipment. Mr. Johnson was "flaming mad" when he returned to demand his money back. Mr. Cramer claims that he did not call Mr. Johnson a "nigger," but rather said "whoa, whoa, nigga please," and did so "in sort of a kinship way" in an effort to calm him. Defs.' Opp'n at 4. He placed the ten dollars on the counter, rather than throwing it at Mr. Johnson. When Mr. Johnson reacted strongly to his use of the term "nigga," he apologized twice. He undisputedly apologized to Mr. Johnson, to a police officer who responded to the incident after Mr. Johnson called for assistance, and to his employer. In his view, he inadvertently offended Mr. Johnson, but had neither racial animus toward him nor a desire to prevent him from buying gas.

The parties offer a plethora of evidence and argument in support of their versions of these events. At least one customer at the station witnessed the incident and has

ORDER – 2

offered testimony. The Renton Police Officer who responded to the scene took statements from both Mr. Cramer and Mr. Johnson. Mr. Cramer and Mr. Johnson have offered their versions of events in several declarations to this court, as well as in depositions. The electronic record of transactions on the station's pumps is part of the record, but it does not conclusively show either intentional or accidental conduct on Mr. Cramer's part. The parties debate the difference (if any) between the terms "nigger" and "nigga," and attempt to demonstrate that these words are or are not invariably racially offensive. As the court discusses below, a jury, not this court, must resolve the parties' disputes.

### III. ANALYSIS

The court cannot resolve factual disputes in resolving a summary judgment motion. The court must instead draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in answering legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

Mr. Johnson asserts four claims arising out of his encounter with Mr. Cramer. He alleges violations of 42 U.S.C. §§ 1981-82, violations of the Washington Law Against Discrimination ("WLAD"), violations of the Washington Consumer Protection Act ("CPA"), and intentional infliction of emotional distress. Both parties believe that no

ORDER – 3

disputed facts prevent the court from deciding what happened at the Grady Way Station on the day in question, and thus the court can decide whether Defendants are liable as a matter of law. The parties are wholly mistaken. The evidence before the court reveals numerous factual disputes. The court need not highlight each of them. There are many, and a jury, not the court, must resolve them. As a result of those disputes, the court cannot determine if Mr. Cramer expressed any racial animus toward Mr. Johnson, much less if his alleged animus led him to deliberately refuse to sell him gasoline. The court cannot determine what term Mr. Cramer used when referring to Mr. Cramer, nor can the court determine what Mr. Cramer meant by the term. In short, the court can only determine that Mr. Johnson was unsuccessful in purchasing gas, and that he has brought a lawsuit as a result.

The remainder of this order discusses Mr. Johnson's causes of action, highlighting factual disputes that prevent the court from determining liability. The court's discussion of these disputes is not exhaustive. The parties raise many more disputes than the court addresses in this order.

**1.    Federal Civil Rights Claims**

The federal statutes that Mr. Johnson invokes protect private parties from, among other things, discrimination in the making and enforcement of contracts and in purchases of real property. 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ."); 42 U.S.C. § 1982 ("All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.").

If a jury believes Mr. Cramer, then he did not deprive Mr. Johnson of property because of his race. Instead, he temporarily deprived Mr. Johnson of property because he lacked either the focus or the competence to operate the pumps. Mr. Johnson terminated

ORDER – 4

the transaction out of frustration, and Mr. Johnson's expression of racial animus (if there was one) came after Mr. Johnson had already decided to terminate the transaction.

If a jury believes Mr. Johnson, then they may conclude that racial animus motivated Mr. Cramer's slur and also motivated Mr. Cramer's refusal to dispense gasoline to Mr. Johnson. The court cannot determine on a summary judgment motion whose version of events to believe.

Much of Mr. Johnson's argument is pinned to his erroneous view that Mr. Cramer's "use of a racial slur in the midst of a commercial retail sales transaction is conclusive evidence of a racially discriminatory intent." Pltf.'s Mot. at 11. Mr. Johnson offers no legal support for this view. The cases he cites properly note that the use of a racial slur is evidence of racial animus. It is not conclusive evidence. It is possible that Mr. Cramer meant nothing derogatory, despite his use of a slur with a deplorable history. It is possible that Mr. Cramer is a bigot, but nonetheless was not discriminating against Mr. Johnson. Mr. Johnson's view that the use of a racial slur is dispositive of liability in this case is mistaken.

### 2. WLAD Claim

The WLAD's prohibition of invidious discrimination, including racial discrimination, guarantees citizens "the right to full enjoyment of" public accommodations. RCW § 49.60.030(1)(b). Defendants concede, as they must, that Grady Way Station is a public accommodation. They request summary judgment because they assert that the "offensive post-contractual language used by Mr. Cramer was uttered after [Mr. Johnson] indicated he was no longer interested in exercising 'the right to full enjoyment of any of the accommodations, advantages, or privileges' of Grady Way Station." Def.'s Mot. at 16 (quoting RCW 49.60.030(1)(b)).

Unlike Mr. Johnson's federal claims, his WLAD claim does not require him to prove that Mr. Cramer refused to sell him gas because of his race. He need only prove that he was deprived of his "right to full enjoyment" of the gas station because of his

ORDER – 5

race. As the court has noted, Mr. Johnson's use of a racial slur is evidence of racially motivated conduct. Nonetheless, a reasonable jury could believe Mr. Johnson's assertion that he was using that slur as an expression of kinship in an effort to calm Mr. Johnson. The parties endlessly debate the meaning and context in which the terms "nigga" or "nigger" may be used.[1] The jury must decide what Mr. Cramer said, what he meant by it, and what the surrounding circumstances prove about the motivation for his conduct toward Mr. Cramer.

### 3. CPA Claim

The CPA provides a private right of action to a plaintiff who suffers injury in his "business or property" as a result of, among other things, "unfair or deceptive acts" that occur in trade or commerce. RCW § 19.86.020 (prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce"); § 19.86.090 (delimiting private right of action). Violations of the WLAD that occur in the course of trade or commerce are per se violations of the CPA. *State v. Schwab*, 693 P.2d 108, 110-111 & n.8 (Wash. 1985).

Again, Defendants' sole basis for avoiding Plaintiffs' CPA claim is their contention that Mr. Johnson had completed his "trade or commerce" at Grady Way Station before any discriminatory conduct occurred. For the reasons already stated, the court rejects that argument. The court also rejects, however, Plaintiff's contention that the court can find discriminatory conduct as a matter of law. Again, a reasonable jury could conclude that Mr. Johnson's race did not motivate Mr. Cramer's conduct.

### 4. Intentional Infliction of Emotional Distress

A plaintiff claiming intentional infliction of emotional distress (also known as "outrage") must prove three elements: "(1) extreme and outrageous conduct, (2)

---

[1] Defendants introduce evidence of the use of the term "nigger" in popular culture, including in song lyrics. Mr. Johnson has asked the court to strike that evidence. The evidence is of little use to the court. The only relevant issue in this case is what Mr. Cramer meant by his use of the term. Evidence of song lyrics and popular debate over the use of the term is marginally relevant at best. The court declines to strike the evidence, however, as Defendants' use of it has neither influenced the court's decision nor otherwise prejudiced Mr. Johnson.

ORDER – 6

intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002). To satisfy the first element, the plaintiff must prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Dicomes v. State*, 782 P.2d 1002 (1989)). A court need not permit a jury to resolve an outrage claim if it determines that reasonable minds could not differ on whether the challenged conduct was sufficiently outrageous. *Id.*

Mr. Johnson believes that whatever slur Mr. Cramer used, it was "extreme and outrageous" as a matter of law. Mr. Johnson is mistaken. Even if a jury finds racial animus in Mr. Cramer's conduct, it need not necessarily find his conduct extreme and outrageous. Indeed, Defendants' contention that Mr. Cramer's conduct, even viewed in the light most favorable to Mr. Johnson, was not sufficiently outrageous presents a close question. A single use of a racial epithet perhaps does not constitute sufficiently outrageous behavior. In this case, however, Mr. Johnson may be able to prove racially motivated misconduct preceding the racial epithet, and may be able to prove that the surrounding circumstances make Mr. Cramer's conduct sufficiently outrageous. The court thus denies summary judgment against Plaintiff's outrage claim, without prejudice to revisiting this issue on a proper motion from Defendants after the close of Plaintiff's evidence.

The court also denies Defendants' motion for summary judgment that Grady Way Station, LLC is not vicariously liable for Mr. Cramer's intentional tort. The court acknowledges that proof that an employee's act was intentional and outside the scope of his employment is sufficient to defeat vicarious liability. *Robel*, 59 P.3d at 620. In this case, however, factual disputes prevent the court from holding that Mr. Cramer's conduct was outside the scope of his employment as a matter of law.

ORDER – 7

## IV.  CONCLUSION

For the reasons stated above, the court DENIES both parties' motions (Dkt. ## 37, 40).  The court directs the parties to appear for a pretrial conference at 3:00 p.m. on October 30, 2009.

The court has reviewed Plaintiff's counsel's October 14 letter (Dkt. # 14) regarding the scheduling of trial, and has directed its in-court deputy clerk to discuss those concerns with the parties.  Based on those communications, the court informs the parties that trial will occur from Monday, November 9, 2009 until Monday, November 16, 2009.  Trial will not take place on the Wednesday, November 11, 2009 court holiday, but will otherwise run from 9:00 a.m. to 4:30 p.m.  Jury selection will be completed by noon on Monday, November 9.  Witness testimony will conclude no later than the close of trial on Friday, November 13.  If necessary, closing arguments will occur on the morning of Monday, November 16.  The court will impose a timing system to ensure that the parties split trial time evenly between them.

DATED this 16th day of October, 2009.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 8